IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER FOUNDATION, )
                                )
    Plaintiff,                  )
                                )
        v.                      )  Civil Action No. 1:11-CV-00939
                                )
U.S. DEPARTMENT OF JUSTICE,     )
                                )
    Defendant.                  )
                                )

**DECLARATION OF DAVID M. HARDY**

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), formerly at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C., and currently relocated to Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 279

employees who staff a total of ten (10) units and two field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act of 1974; Executive Order ("E.O.") 13526 (Dec. 29, 2009); Presidential, Attorney General and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith. My responsibilities also include the review of FBI information for classification purposes as mandated by E.O. 13526 and the preparation of declarations in support of Exemption 1 claims under the FOIA, 5 U.S.C. § 552 (b)(1). I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to E.O. 13526, §§ 1.3 and 3.1.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Specifically, I have been advised that on or about September 16, 2010, the Office of Legal Counsel ("OLC"), U.S. Department of Justice ("DOJ"), contacted the FBI's Office of the General Counsel ("OGC"), to request that the FBI review and defend the classification determinations in an OLC-originated 11-page document (hereinafter "OLC Memo") which analyzes the FBI's authority under 28 U.S.C. § 2511.

(4)     We have been advised that this OLC document, which had been requested at the administrative stage by plaintiff (via letter dated February 15, 2011), was withheld in full by OLC pursuant to FOIA Exemptions (b)(1) and (b)(5), 5 U.S.C. §§ 552 (b)(1) and (b)(5).

Furthermore, we learned that the OLC Memo has now become the subject of the present litigation, which EFF filed on or about May 19, 2011. In order to properly defend its motion for summary judgment, OLC has requested that the FBI provide this declaration to support the application of Exemption 1 in the OLC Memo. We have been advised by OLC that the classification markings in the OLC Memo were derived from the classification markings contained in two letters in which the FBI requested legal advice from OLC, and which provided OLC with factual information as to which the legal advice was sought. These two letters are as follows: A November 27, 2009 opinion request letter from Valerie Caproni, General Counsel, FBI to David Barron, Acting Assistant Attorney General, Office of Legal Counsel; and a December 11, 2009 letter from Ms. Caproni to Ms. Barron supplementing the previous letter by providing additional factual information and expanding upon the request for legal advice. The FBI requested OLC's legal advice in order to assist its evaluation of how it should respond to a draft Report by the Office of Inspector General of the Deparment of Justice (the "OIG") in the course of a review by the OIG of the FBI's use of certain investigatory procedures ("OIG Review") used by the FBI to obtain telephone records. Many of the individual paragraphs of these two letters were marked by the FBI as classified at the "S/NF" level, which permits limits access to the documents to those individuals with an appropriate security clearance and a need to know. See U.S. Dep't of Justice Office of the Inspector General, *"A Review of the Federal Bureau of Investigation's Use of Exigent Letters and Other Informal Requests for Telephone Records"* (Jan. 2010) (unclassified) (hereinafter "OIG Report"), http://www.justice.gov/oig/special/s1001r.pdf, at 264 & n. 280. I have reviewed the classification markings contained in FBI's letters of November 27, 2009 and December 11, 2009,

3

as well as the classification markings contained in the OLC Memo of January 8, 2010.

(5)  As a result, in accordance with <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), the FBI submits this declaration in support of DOJ's motion for summary judgment,[1] which provides the Court and plaintiff with a detailed justification for the continued withholding of the classified portions of the OLC Memo pursuant to FOIA Exemption 1.[2]

(6)  The FBI's analysis of the withholding of classified information contained in this document is based on the standards articulated in the FOIA statute, 5 U.S.C. § 552 (b)(1).[3] Exemption (b)(1) protects from disclosure those records that are:

    (A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and

    (B) are in fact properly classified pursuant to such Executive Order.

(7)  The FBI's analysis of whether Exemption (b)(1) permits the withholding of agency records consists of two significant steps. First, the FBI must determine whether the information contained in the record is information that satisfies both the substantive and procedural criteria of the applicable E.O. governing the classification and protection of national security information; and second, that it complies with the various substantive and procedural

---

[1] We have been advised that OLC will be submitting a separate <u>Vaughn</u> declaration defending its assertion of Exemption 5, 5 U.S.C. § 552 (b)(5), contemporaneously herewith, and that OLC will provide additional details regarding the applicability of that exemption. Thus, this declaration will only address applicability of Exemption 1.

[2] Upon completion of its classification review, the FBI provided to OLC an appropriately marked version of the OLC Memo which reflected that classification review and determinations reached in accordance therewith.

[3] Exemption (b)(1) has been asserted in the aggregate on the following pages of the OLC

criteria of the current E.O., E.O. 13526, which governs the classification and protection of information which affects the national security,[4] and prescribes various substantive and procedural criteria. I am bound by the requirements of E.O. 13526 when making classification determinations.

(8) In order for information to be properly classified, and thus properly withheld from disclosure pursuant to Exemption (b)(1), the information must meet the following requirements set forth in E.O. 13526, §1.1 (a):

    (1) an original classification authority is classifying the information;

    (2) the information is owned by, produced by or for, or is under the control of the United States Government;

    (3) the information falls within one or more of the categories of information listed in section 1.4 of this order; and

    (4) original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(9) As I will explain in further detail below, in my role as an original classification authority, I have determined that the information withheld pursuant to Exemption (b)(1) is under the control of the United States Government, is classified and requires a classification marking at the "SECRET" level, since the unauthorized disclosure of this information "reasonably could be expected to cause serious damage to the national security . . ." which I will describe in further

---

Memo: pp. 1-2, 4-11.

[4] Section 6.1(cc) of E.O. 13526 defines "National security" as "the national defense or foreign relations of the United States."

5

detail herein. See E.O. 13526, § 1.2(a)(2).

(10) In addition to these substantive requirements, certain procedural and administrative requirements of E.O. 13526 must be followed before information can be considered to be properly classified, including, but not limited to, the proper identification and marking of the document itself, which the FBI has now completed. In particular, I have made certain that all procedural requirements of E.O. 13526 were followed:

(1) the document was marked as required and stamped with the proper classification designation;[5]

(2) the document was marked to indicate clearly which portions are classified, which portions are exempt from declassification as set forth in E.O. 13526, §1.6 (c), and which portions are unclassified;[6]

(3) the prohibitions and limitations on classification specified in E.O. 13526, § 1.7,[7] were adhered to;

(4) the declassification policies set forth in E.O. 13526, §§ 3.1 ("Authority for Declassification") and 3.3 ("Automatic Declassification") were followed; and

(5) any reasonably segregable portions of this classified document which did not meet the standards for classification under E.O. 13526 were declassified and marked for release, unless withholding was otherwise

---

[5] E.O. 13526, §1.6 (a)(1) - (5).

[6] E.O. 13526, §1.6 (a)(5)(c).

[7] E.O. 13526, § 1.7(a) specifically states that "[i]n no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to:

(1) conceal violations of law, inefficiency, or administrative error;
(2) prevent embarrassment to a person, organization, or agency;
(3) restrain competition; or
(4) prevent or delay the release of information that does not require protection in the interest of the national security."

warranted under applicable law.[8]

## FINDINGS OF DECLARANT

(11) As explained above, the 11-page OLC Memo was written by OLC in response to a specific request by the FBI for legal advice and guidance concerning the FBI's evaluation of how it should respond to a draft OIG Report concerning the FBI's use of certain investigative techniques in the course of certain national security and law enforcement investigations.[9]

(12) With the above requirements in mind, I personally and independently examined the FBI information contained in the OLC Memo and withheld pursuant to Exemption (b)(1). As a result of this examination, I determined that the classified information contained in the OLC Memo continues to warrant classification at the "SECRET" level, and is exempt from disclosure pursuant to E.O. 13526, §1.4 (c) – ("intelligence activities (including covert action), intelligence sources or methods or cryptology,") as the unauthorized disclosure of the information in the OLC Memo "reasonably could be expected to cause serious damage to the national security . . . ." See E.O. 13526, § 1.2 (a)(2).

## INTELLIGENCE ACTIVITIES, INTELLIGENCE SOURCES OR METHODS

---

[8] 5 U.S.C. § 552(b) provides in part, that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."

[9] Congress enacted ECPA to extend government restrictions on wire taps from telephone calls to include transmissions of electronic data by computer. ECPA itself was an amendment to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, which was primarily designed to prevent unauthorized government access to private electronic communications. The amendments to ECPA also added new provisions prohibiting access to stored electronic communications – through the Stored Communications Act, 18 U.S.C. §§ 2701-2712.

(13)     E.O. 13526, §1.4 (c), exempts from disclosure "intelligence activities (including covert action), intelligence sources or methods or cryptology." An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest. An intelligence method is used to indicate any procedure (human or non-human) utilized to obtain information concerning such individual or organization. An intelligence activity or method has two characteristics. First, the intelligence activity or method -- and information generated by it -- is needed by U.S. intelligence/counterintelligence agencies to carry out their missions. Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information are to be preserved. Classified information is withheld on certain pages to protect intelligence methods utilized by the FBI for gathering intelligence data.[10]

(14)     The redactions of certain portions of the OLC Memo were made in order to protect from disclosure classified information which would reveal actual intelligence activities, sources or methods used by the FBI against targets of foreign counterintelligence and counterterrorism investigations or operations; and disclose the intelligence activities, sources or methods, as well as intelligence-gathering capabilities used by the FBI to gather specific information on targets of national security investigations. The intelligence activities or methods detailed in the withheld information are an effective means for the FBI to gather, store, or disseminate intelligence information. The activities or methods that are discussed in the January

---

[10] Exemption (b)(1) has been asserted as to intelligence activities, intelligence sources, or

8, 2010 OLC Memo are used in the FBI's current intelligence or counterintelligence investigations, and are in accordance with the Attorney General's guidelines on FBI counterintelligence and counterterrorism investigations.

(15)     The classification redactions were made to protect from disclosure information that would reveal the actual intelligence activities and methods used by the FBI against targets of foreign counterintelligence investigations or operations; and disclose the intelligence gathering capabilities of the activities or methods directed at particular targets. The intelligence activities or methods detailed in the withheld information are effective means for the FBI to gather, store or disseminate intelligence information. As the records reflect, the criteria applied and priorities assigned are used in the FBI's present investigations and conducted in accordance with the Attorney General's guidelines.

(16)     The information in the January 8, 2010 OLC Memo concerning activities and methods is highly specific in nature and known to very few individuals. Disclosure of the specific information which describes these intelligence activities and methods -- which are still used by the FBI today to gather intelligence information -- could reasonably be expected to cause serious damage to national security because disclosure would allow hostile entities to discover the current methods and activities used and could then develop countermeasures which could severely disrupt the FBI's intelligence-gathering capabilities. The countermeasures could include the alteration of behavior to evade detection as well as utilize these same methods and activities to engage in disinformation. This would severely damage the FBI's efforts to detect and

---

intelligence methods on the following pages of the OLC Memo: pp. 1-2, 4-11.

apprehend violators of the United States' national security and criminal laws.

(17) Release of the exempted classified material would reveal actual intelligence activities or methods utilized by the FBI and disclose the intelligence-gathering capabilities of those activities or methods employed. The release of this information could permit hostile governments to appraise the scope, focus, location, and capabilities of the FBI's intelligence-gathering methods and activities, and allow hostile agents to devise countermeasures to circumvent these intelligence activities or methods and render them useless in providing intelligence information. This would severely disrupt the FBI's intelligence gathering capabilities. This information is properly classified at the "SECRET" level and withheld pursuant to E.O. 13526, §1.4(c), and exempt from disclosure pursuant to FOIA Exemption (b)(1).

## DEFENDANT'S BURDEN OF ESTABLISHING EXEMPTION (b)(1) CLAIMS

(18) The information withheld in this case pursuant to Exemption 1 was examined in light of the body of information available to me concerning the national defense and foreign relations of the United States. This information was not examined in isolation. Instead, each piece of information contained in the FBI's letters of November 27, 2009 and December 11, 2009, and OLC's memorandum of January 8, 2010, was evaluated with careful consideration given to the impact that disclosure of this information will have on other sensitive information contained elsewhere in the United States intelligence community's files, including the secrecy of that other information. Equal consideration was given to the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States, would have upon the information I examined, and upon attempts by a hostile

entity to analyze such information.

(19) In those instances where, in my judgment, the disclosure of this information could reasonably be expected to cause serious damage to the national security, and its withholding outweighed the benefit of disclosure, I exercised my prerogative as an original classification authority and designated that information as classified in the interest of national security at the "SECRET" level, and invoked FOIA Exemption (b)(1) to prevent disclosure. Likewise, the justifications for the withheld classified information were prepared with the intent that they be read with consideration given to the context in which the classified information is found. This context includes not only the surrounding unclassified information, but also other information already in the public domain, as well as information likely known or suspected by hostile intelligence entities. It is my judgment that any greater specificity in the descriptions and justifications set forth with respect to the intelligence activities (including special activities), intelligence sources or methods, or foreign relations and activities could reasonably be expected to jeopardize the national security of the United States, and as a result, all information appearing in these documents has been appropriately classified pursuant to E.O. 13526,§ 1.4(c) and withheld pursuant to FOIA Exemption (b)(1).

### OLC MEMORANDUM – CONSULTATION WITH OTHER AGENCIES

(20) As part of its classification review of the OLC Memorandum, the FBI identified potential equities and interests of other government agencies ("OGAs") with regard to the OLC Memo. As a result, in accordance with the U.S. Department of Justice ("DOJ") DOJ regulations, 28 C.F.R. § 16.4, the FBI referred the OLC Memo for consultation with those OGAs. One OGA, which has requested non-attribution, affirmatively responded to our consultation and concurs in

all of the classification markings, including the reclassification of footnote 4 from "(U)"to the "(S//NF)" level." Based on that consultation, as well as pursuant to my own designation as an original classification authority, the FBI continues to require that the portions of the OLC Memo marked as classified be withheld on the basis of FOIA Exemption (b)(1).

## CONCLUSION

(21)    Based on a careful classification review of the January 8, 2010 OLC Memo, the FBI has concluded that all sections of the Memo previously marked "SECRET/NOFORN" – ("S//NF") should remain marked accordingly; that all paragraphs previously marked "UNCLASSIFIED" "(U)" should remain marked accordingly as "(U);" and that one footnote which had been marked "UNCLASSIFIED" required re-designation to "SECRET/NOFORN" for the reasons articulated herein.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of November, 2011.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia