## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ELECTRONIC FRONTIER FOUNDATION**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 11-cv-0939 (RJL) |
| | ) | |
| **DEPARTMENT OF JUSTICE**, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

### Introduction

Plaintiff Electronic Frontier Foundation ("EFF") respectfully submits this memorandum in opposition to defendant Department of Justice's ("DOJ") motion for summary judgment and in support of plaintiff's cross-motion for summary judgment.  EFF brought this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of a single, eleven-page document issued by DOJ's Office of Legal Counsel ("OLC"), delineating the scope of authority of the Federal Bureau of Investigation ("FBI") under federal surveillance law.  *See* Complaint for Injunctive Relief ("Compl.") (Dkt. No. 1) ¶¶ 1, 5-8.  DOJ moved for summary judgment on November 10, 2011 (Dkt. No. 11) asserting that OLC's written statement of law could be withheld in its entirety under Exemptions 1 and 5 of FOIA, 5 U.S.C. § 552(b)(1), (5).  Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Def. Mem.") at 6-17.  For the reasons more fully described below, EFF now opposes DOJ's motion and cross-moves for summary judgment.

## BACKGROUND

**I.    The Electronic Communications Privacy Act, the Stored Communications Act, and Government Acquisition of Communications Records under Federal Law**

The Electronic Communications Privacy Act of 1986 ("ECPA"), Pub. L. No. 99-508, 100 Stat. 1848 (codified as amended at 18 U.S.C. §§ 2510 *et seq.*, 2701 *et seq.*, and 3121 *et seq.*) was passed by Congress to protect three different aspects of electronic communications privacy, two of which are relevant to this case.  Title I amended the 1968 federal wiretap statute to cover electronic communications.  *See* 18 U.S.C. §§ 2510-22.  Title II of ECPA created a new chapter of the criminal code dealing with access to stored communications and transactional records, commonly known as the "Stored Communications Act" or "SCA."  *See* 18 U.S.C. §§ 2701-12.

ECPA, Title I, 18 U.S.C. § 2510 *et seq.*, makes it generally unlawful to listen to or otherwise acquire the contents of a private "wire, oral, or electronic communication" without the permission of at least one party to the communication.  18 U.S.C. § 2511(1)(a).  ECPA, however, does provide for court-approved electronic surveillance in federal criminal investigations when the government satisfies certain exacting standards.  *See* 18 U.S.C. § 2516.  Another provision, 18 U.S.C. § 2511(2)(f), also excepts certain types of foreign intelligence-related surveillance from the strictures of ECPA.  § 2511(2)(f) provides:

> Nothing contained in this chapter or chapter 121 or 206 of this title, or section 705 of the Communications Act of 1934, shall be deemed to affect the acquisition by the United States Government of foreign intelligence information from international or foreign communications, or foreign intelligence activities conducted in accordance with otherwise applicable Federal law involving a foreign electronic communications system, utilizing a means other than electronic surveillance as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978, and procedures in this chapter or chapter 121 and the Foreign Intelligence Surveillance Act of 1978 shall be the exclusive means by which electronic surveillance, as defined in section 101 of such Act, and the interception of domestic wire, oral, and electronic communications may be conducted.

18 U.S.C. § 2511(2)(f).  While this section does provide a limited exception to ECPA for specific types of surveillance, the section also clarifies that the noted statutes are the exclusive means by which the government may conduct electronic surveillance within the United States.[1]

Title II of ECPA, the Stored Communications Act, 18 U.S.C. § 2701 *et seq*., regulates when a communication provider may disclose to third parties, including the government, the contents of, or customer records relating to, telephone calls, emails, and other electronic communications. *See* 18 U.S.C. §§ 2702-03.  The SCA generally prohibits a service provider's disclosure of customer or subscriber records to the government without a warrant, court order, or a federal grand jury, trial, or administrative subpoena.  *See* 18 U.S.C. § 2702(a)(3), (c).

Through the issuance of national security letters ("NSLs")—secret administrative subpoenas that provide the FBI broad access to certain sensitive records in national security investigations[2]—the FBI can compel the disclosure of "subscriber information and toll billing records information, or electronic communication transactional records" in the possession of service providers.  18 U.S.C. § 2709.  The FBI's ECPA NSL authority requires only that the FBI director, or certain limited designees, make a certification that the records sought "are relevant to an authorized investigation to protect against international terrorism or clandestine intelligence activities" and are not sought solely on the basis of activities protected by the First Amendment. 18 U.S.C. § 2709(b).  Each NSL is accompanied by a gag order prohibiting the service provider from ever revealing the demand was made.  18 U.S.C. § 2709(d).  The FBI is required to report

---

[1] The OLC opinion at issue in this case discusses the FBI's purported authority, under 18 U.S.C. § 2511(2)(f), to obtain call record information from providers on a voluntary basis without valid process or a qualifying emergency.  *See* Compl. ¶ 8.

[2] Other statutes also permit the FBI to issue NSLs for bank account information, 12 U.S.C. § 3414, and credit reports, 15 U.S.C. §§ 1681u, v, in specific types of national security investigations.

to certain congressional committees, on a semiannual basis, concerning all NSL requests made under § 2709.  18 U.S.C. § 2709(e).

Another exception to the SCA's prohibition on disclosure is the emergency disclosure provision, which permits service providers to disclose customer records to the government when "the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency[.]"  18 U.S.C. § 2702(c)(4).

The record at issue in this case provides the binding legal interpretation of the Executive Branch on the FBI's authority under these statutes.

## II.     The Office of Inspector General's Review of the FBI's Use of Federal Surveillance Authorities from 2003 to 2007

The USA PATRIOT Improvement and Reauthorization Act, Pub. L. No. 109-177, 120 Stat. 192 (2006), authorized DOJ's Office of Inspector General ("OIG") to conduct a series of reviews of national security investigations in which the FBI used several federal surveillance authorities.  *See* Pub. L. No. 109-177, § 119.  Specifically, the Act authorized the OIG to investigate and review the FBI's use of NSLs.

In 2007, the OIG published its first report on the FBI's use of NSLs from 2003 to 2005, finding that the Bureau had engaged in widespread abuse and misuse of its statutory authority. *See* U.S. Dep't of Justice, Office of Inspector General, *A Review of the Federal Bureau of Investigation's Use of National Security Letters*, Special Report (March 2007) ("*NSL I*").[3] Significantly, the report described the FBI's relationship with "three telephone companies,"[4]

---

[3] *Available at* http://www.justice.gov/oig/special/s0703b/final.pdf

[4] The names of the three telephone companies were redacted from *NSL I*.  However, in Congressional testimony, former General Counsel of the FBI, Valerie Caproni, disclosed that the three companies under contract with the FBI were AT&T, Verizon, and MCI.  *The Inspector General's Independent Report on the FBI's Use of National Security Letters, Before the House Comm. On the Judiciary*, 110th Cong. 251 (March 2007) (testimony of Valerie Caproni, General Counsel, FBI) ("The telephone companies were AT&T, Verizon and MCI, which has now been

which provided the Bureau with "near real-time servicing" of its requests for telephone records. *NSL I* at 88.  The OIG report further disclosed that, in many instances, the FBI issued "exigent letters" to the three companies in order to obtain telephone records: these "exigent letters," in effect, urged the three telephone companies to provide records to the FBI immediately, while promising that the Bureau would provide legal process (either a grand jury subpoena or an NSL) in the future.  *Id*. at 89-92.  The FBI issued over 700 of these so-called "exigent letters" to obtain records associated with over 3,000 telephone numbers.  *Id*. at 90.  However, the OIG report disclosed that, in many instances, the Bureau never provided the promised legal process; the exigent letters were issued by FBI personnel lacking the authority to issue valid process for the records they sought; and the letters were used in instances that lacked the requisite predication to issue valid legal process.  *Id*. at 95-8.  Thus, the OIG concluded that, through the FBI's use of these exigent letters:

> [FBI] personnel circumvented the [Electronic Communications Privacy Act] NSL statute and violated the [National Security Investigation] Guidelines and internal FBI policies. These matters were compounded by the fact that [FBI] used exigent letters in non-emergency circumstances, failed to ensure that there was duly authorized investigations to which the request could be tied, and failed to ensure that NSLs were issued promptly after the fact pursuant to existing or new counterterrorism investigations.

*Id*. at 93.

Based on the evidence of abuse uncovered in the OIG's *NSL I* report, the OIG published a subsequent review in 2010, focusing entirely on the FBI's use of exigent letters and other informal requests for records from the three telephone companies.  *See* U.S. Dep't of Justice, Office of Inspector General, *A Review of the Federal Bureau of Investigation's Use of Exigent*

---

acquired by Verizon."), *available at* http://www.gpo.gov/fdsys/pkg/CHRG-110hhrg34175/html/CHRG-110hhrg34175.htm

*Letters and Other Informal Requests for Telephone Records* (January 2010) ("*NSL III*").[5]  Like

OIG's previous reports, *NSL III* again disclosed widespread abuse and misuse stemming from the

three telephone companies' disclosure of communications records to the FBI.  *Id.* at 288-89.

*NSL III* further documented the Bureau's misuse of exigent letters, and the report similarly

disclosed that FBI personnel had even replaced exigent letters with in-person records-requests,

through requests via e-mail or phone, and by placing post-it notes on the workstations of

telephone company employees co-located within FBI offices.  *Id.* at 27, 45-47.  The OIG

concluded that the Bureau's practice of informally requesting telephone records resulted in

numerous ECPA violations from 2003 to 2007.  *Id.* at 65-71.

 *NSL III* discusses the OLC Opinion at issue in this case on pages 263-268 of the report.

*Id.* at 263-268 (relevant excerpt filed herewith as Exhibit A).

### III.   OLC's 2010 Opinion Assessing the Legality of Voluntary Disclosure of Telephone Records to the FBI

 Before the publication of *NSL III*, the FBI was permitted to review and respond to the

OIG's findings.  *Id.* at 263-4.  In July 2009, the Bureau provided the OIG with "comments to a

draft of" *NSL III*.  *Id.* at 265.  Nearly six months later, on November 27, 2009, the FBI asked the

OLC for an opinion on the legality of the practices described in the OIG report—specifically,

the Bureau's practice from 2003 to 2007 of obtaining communications records without valid

legal process or a qualifying emergency.  *See* Declaration of David M. Hardy ("Hardy Decl.") ¶

4; Declaration of Paul P. Colborn ("Colborn Decl.") ¶ 9; *NSL III* at 263.  "The FBI presented

---

[5] *Available at* http://www.justice.gov/oig/special/s1001r.pdf.  The OIG also issued a follow-up report to *NSL I*, assessing the FBI's efforts to bring its NSL usage into compliance with the law. *See* U.S. Dep't of Justice, Office of Inspector General, *A Review of the FBI's Use of National Security Letters: Assessment of Corrective Actions and Examination of NSL Usage in 2006,* Special Report*,* (March 2008), *available at* http://www.justice.gov/oig/special/s0803b/final.pdf ("*NSL II*").  Like *NSL I*, the report uncovered further evidence of widespread FBI abuse of its NSL authority.  *See NSL II* at 8-9.

the issue to the OLC as follows: 'Whether Chapter 121 of Title 18 of the United States Code [the Stored Communications Act] applies to call detail records" in certain circumstances.[6]  *NSL III* at 264 n. 280.  On January 8, 2010, the OLC issued its opinion ("the OLC Opinion" or "the Opinion"), establishing the Executive Branch's authoritative statement on the legality of service providers voluntarily disclosing call records to the FBI under the ECPA.  *See* Colborn Decl. ¶ 9; *NSL III* at 263.  Twelve days later, on January 20, 2010, the OIG published *NSL III*.  *See* FBI Press Release, *Response to Inspector General's Review of FBI's Use of Exigent Letters* (January 20, 2010) ("Today, the Department of Justice's Office of the Inspector General (OIG) released its report on the FBI's use of exigent letters.").[7]

The OLC Opinion supported the FBI's position that, "as a matter of law," the FBI could obtain call records "without any legal process or qualifying emergency through voluntary production by the communications service providers" in certain circumstances.  *NSL III* at 263. The OIG report noted that the FBI "had never considered or relied upon" its novel statutory interpretation "when it obtained any of the telephone records at issue in" *NSL III*.  *Id*. at 265. Furthermore, the OIG wrote that the Bureau "stated that it [did] not intend to rely on" its interpretation in the future.  *Id*. at 265 n. 283.  Nevertheless, the Inspector General cautioned that the FBI's decision not to rely on its perceived statutory authority "could change," noting that "appropriate controls on such authority should be considered now, in light of the FBI's past practices and the OLC Opinion" supporting those practices.  *Id*.  Indeed, the Inspector General determined that the interpretation of federal law proffered by the Bureau and OLC "creates a significant gap in FBI accountability and oversight that should be examined closely by the FBI,

---

[6] Those circumstances were redacted from the OIG's report.  *See NSL III* at 264 n. 280.

[7] *Available at* http://www.fbi.gov/news/pressrel/press-releases/response-to-inspector-general2019s-review-of-fbi2019s-use-of-exigent-letters

the Department, and Congress." *Id.* at 268.  The OIG recommended "the Department notify

Congress of this issue and of the OLC opinion interpreting the scope of the FBI's authority

under" federal law.  *Id.*

### IV.    EFF's FOIA Request to OLC

By letter sent to DOJ on February 15, 2011, EFF requested the OLC Opinion.  Compl. ¶

9.  On February 25, 2011, DOJ responded, informing EFF that it was withholding the Opinion

in its entirety under Exemptions 1 and 5 of FOIA.  *Id.* ¶ 10.  The agency has claimed Exemption

1 "in the aggregate" for pages 1-2 and 4-11 of the Opinion.  Hardy Decl. ¶ 6 n. 3.  DOJ also

claims that the entire Opinion is exempt from disclosure under the deliberative process privilege

and the attorney-client privilege of Exemption 5.  Def. Mem. at 11.  On May 19, 2011, EFF

initiated this action.  On November 10, 2011, DOJ moved for summary judgment.  EFF now

opposes that motion and cross-moves for summary judgment.

## <u>Argument</u>

It is well established that "secret law is an abomination."  *Tax Analysts & Advocates v.

IRS*, 362 F. Supp. 1298, 1310 (D.D.C. 1973) (quoting K. Davis, Administrative Law Treatise

(1970 Supp.) § 3A.12).  Yet, under the guise of FOIA Exemptions 1 and 5, DOJ attempts to

withhold from EFF and the general public an authoritative legal opinion delineating the scope of

the FBI's authority under federal law—in effect, creating a body of secret surveillance law to

which only DOJ is privy.  If the fundamental principle that the public has a "right to know the

policies by which it is governed" is to have any effect, *Nat'l Council of La Raza v. Dep't of

Justice*, 411 F.3d 350, 352 (2nd Cir. 2005), a binding legal opinion setting forth the scope of

applied agency authority under federal law cannot be withheld in its entirety under FOIA.  Here,

DOJ has improperly invoked Exemptions 1 and 5 to shield from public disclosure the Executive

Branch's authoritative statement of the law.

   I.   **The Freedom of Information Act Establishes a Presumption of Disclosure and Requires DOJ to Make a Detailed and Specific Showing that the Withheld Document is Properly Exempt from Disclosure**

The Freedom of Information Act ("FOIA") safeguards the American public's right to know "what their Government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). The central purpose of the statute is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

The FOIA requires disclosure of agency records when requested by the public unless the records fall within one of nine exemptions. *See* 5 U.S.C. § 552(b)(1) - (9). If requested information does not fit squarely into one of these enumerated categories, the law requires federal agencies to release the information. *See NLRB v. Robbins,* 437 U.S. at 221. The exemptions "have been consistently given a narrow compass," and requested agency records that "do not fall within one of the exemptions are improperly withheld[.]" *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted).

Disputes involving the propriety of agency withholdings are commonly resolved at the summary judgment stage in FOIA cases. *Harrison v. EOUSA*, 377 F. Supp. 2d 141, 145 (D.D.C. 2005). In FOIA cases, a court reviews the government's withholding of agency records *de novo*, and the government bears the burden of proving that a particular document falls within one of the nine narrow exemptions to FOIA's broad mandate of disclosure. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755. "Unlike the review of other agency action that must be

upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly

places the burden 'on the agency to sustain its action.'" *Id.* (quoting 5 U.S.C. § 552(a)(4)(B)).

"A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law." *Goodrich v. Teets*, 510 F. Supp. 2d 130 (D.D.C. 2007);

*see also* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In FOIA cases,

in order carry its burden, an agency must prove that "each document that falls within the class

requested either has been produced, is unidentifiable, or is wholly exempt from the Act's

inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation

and quotation omitted). When claiming one of FOIA's exemptions, the agency bears the burden

of demonstrating "to a reviewing court that records are *clearly* exempt." *Birch v. USPS,* 803

F.2d 1206, 1209 (D.C. Cir. 1986) (emphasis added) (citing *Mead Data Cent., Inc. v. Dep't of the

Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

In *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), the D.C. Circuit established the

procedural requirements that "an agency seeking to avoid disclosure" must follow in order to

carry its burden. *Id*. at 828. *Vaughn* requires that "when an agency seeks to withhold

information it must provide a relatively detailed justification, specifically identifying the reasons

why a particular exemption is relevant and correlating those claims with the particular part of a

withheld document to which they apply."[8] *Mead Data Cent.*, 566 F.2d at 251 (citations omitted).

In *King v. Dep't of Justice*, 830 F.2d 210 (D.C. Cir. 1987), the court of appeals reviewed

the case law applying *Vaughn*, emphasizing that:

---

[8] The *Vaughn* requirements are typically satisfied through an agency's submission of an affidavit describing the basis for its withholdings, accompanied by an index listing responsive records and indicating the precise redactions made to the records. In this case, DOJ has not submitted a *Vaughn* index. We refer to DOJ's supporting affidavits collectively as "*Vaughn* submissions."

> [s]pecificity is the defining requirement of the *Vaughn* index and affidavit; affidavits cannot support summary judgment if they are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping."  To accept an inadequately supported exemption claim "would constitute an abandonment of the trial court's obligation under the FOIA to conduct a *de novo* review."

*Id.* at 219 (footnotes and citations omitted); *see also Morely v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (noting that the D.C. Circuit "has provided repeated instruction on the specificity required of a *Vaughn* index").

Finally, in FOIA cases implicating national security, courts are to afford "some measure of deference to the executive" when assessing claims of withholding under Exemption 1.  *Ctr. for Nat'l Sec. Studies v. Dep't of Justice,* 331 F.3d 918, 926 (D.C. Cir. 2003).  However, this measure of deference does not diminish the agency's obligation to satisfy its substantive and procedural obligations under FOIA.  *See Larson v. Dep't of State,* 565 F.3d 857, 864 (D.C. Cir. 2009) (citing *Hayden v. Nat'l Sec. Agency,* 608 F.2d 1381, 1388 (D.C. Cir. 1979)).  And despite this measured deference, courts must not "relinquish[] their independent responsibility" to conduct a thorough *de novo* review.  *Goldberg v. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987) (noting that Congress amended FOIA to clarify its "intent that courts act as an independent check on challenged classification decisions").

DOJ's withholding of the OLC Opinion under Exemptions 1 and 5 was improper and, consequently, the agency is not entitled to summary judgment.  The agency has failed to carry its burden to withhold the OLC Opinion under Exemption 1 in three ways.  First, the agency's *Vaughn* submissions fail to provide the requisite specificity to justify withholding under Exemption 1.  Second, the agency has failed to demonstrate that the OLC Opinion, in its entirety, logically falls within a category of information exempt from disclosure under Exemption 1.  Third, given the circumstances surrounding the OLC Opinion, it is likely that the agency has

improperly classified some material under E.O. 13526, thus precluding its withholding under Exemption 1.

The agency has also failed to carry its burden to withhold the OLC Opinion under the deliberative process privilege of Exemption 5.  First, the agency's *Vaughn* submissions fail to satisfy the heightened specificity required to justify withholding under the deliberative process privilege.  Second, the OLC Opinion is neither "predecisional" nor "deliberative," and therefore cannot be withheld under the deliberative process privilege.  Third, the OLC Opinion constitutes the "working law" of the agency, which may not be withheld under the deliberative process privilege.

The agency has also failed to justify its withholding under the attorney-client privilege of Exemption 5.  Because DOJ waived the attorney-client privilege by distributing the OLC Opinion to third parties, and because the Opinion constitutes the "working law" of the agency, the document is unavailable for withholding under Exemption 5.

Finally, DOJ has failed to provide both EFF and this Court with any segregability analysis, in clear violation of longstanding precedent.  For these reasons, more fully described below, DOJ is not entitled to summary judgment, and EFF respectfully urges this court to grant its cross-motion for summary judgment.

## II.    DOJ has Not Satisfied its Burden of Demonstrating that the Opinion was Properly Withheld in Its Entirety Under Exemption 1

Exemption 1 allows the withholding of records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  While DOJ may withhold properly classified information related to "intelligence activities (including special activities), intelligence sources or methods, or cryptology,"

information is not validly classified, and therefore unavailable for withholding under Exemption 1, if classified to "conceal violations of the law, inefficiency, or administrative error," to "prevent embarrassment," or "to prevent or delay the release of information that does not require protection." *See* E.O. 13526, §1.7(a).

The FOIA allows requesters to challenge the government's withholdings under Exemption 1 and "requires the district court to review the propriety of the classification, and places the burden on the withholding agency to sustain its Exemption 1 claims." *Wiener v. FBI*, 943 F.2d 973, 980 (9th Cir. 1991) (citing *Abbotts v. Nuclear Regulatory Comm'n*, 766 F.2d 604, 606 (D.C. Cir. 1985). Although an agency's classification decisions are accorded substantial weight, as several courts have noted, "deference is not equivalent to acquiescence, and a declaration in support of an [E]xemption 1 withholding may justify summary judgment only if it is sufficient to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Int'l Counsel Bureau v. Dep't of Defense*, 723 F. Supp. 2d 54, 63 (D.D.C. 2010), citing *Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (internal quotations omitted).

DOJ is not entitled to summary judgment as to its withholdings under Exemption 1 for three reasons. First, the agency's *Vaughn* submissions lack the requisite specificity. Second, DOJ has failed to demonstrate that the OLC Opinion, as a whole, logically falls within a category of information exempt from disclosure under Executive Order. And, third, because some information contained within the OLC Opinion may have been classified to conceal "violations of law" or to "prevent embarrassment," Exemption 1 may not be invoked to withhold that information.

### A. DOJ's *Vaughn* Submissions Fail to Provide the Requisite Specificity to Support its Exemption 1 Claim

As described above, agencies carry their procedural burden of justifying the withholding of records only by providing a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with *the particular part of a withheld document to which they apply*." *Mead Data Cent.*, 566 F.2d at 251 (citations omitted) (emphasis added). "[A] district court may award summary judgment to an agency invoking Exemption 1 only if (1) the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed, and (2) the affidavits are neither controverted by contrary record evidence nor impugned by bad faith on the part of the agency." *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987). The requirement of specificity is no less applicable in cases involving Exemption 1. "Even when applying [E]xemption 1, 'conclusory affidavits that . . . are overly vague or sweeping will not, standing alone, carry the government's burden.'" *Int'l Counsel Bureau*, 723 F. Supp. 2d at 63, quoting *Larson v. Dep't of State*, 565 F. 3d 857, 864 (D.C. Cir. 2009).

While E.O. 13526 requires that the document "indicate which portions are classified, with the applicable classification level, and which portions are unclassified," § 1.6(c), DOJ has not specified in its *Vaughn* submissions what words, lines, or paragraphs in the document are classified, other than to mention the "reclassification of footnote 4," Hardy Decl. ¶ 20, and to broadly proclaim, in a footnote, that "Exemption b(1) has been asserted in the aggregate on the following pages of the OLC Memo: pp. 1-2, 4-11." Hardy Decl. ¶ 6 n. 3.

Thus, in a single footnote, DOJ attempts to block the disclosure of all but one page (page 3) of an eleven-page legal analysis under the guise of national security. EFF does not contest

that there may, in fact, be *some* legitimately classified information within the OLC Opinion. However, the broad assertion that the existence of *some* classified material on ten pages of legal analysis justifies the withholding of the OLC Opinion in its entirety—without a more specific description of the location and type of classified material being withheld—cannot satisfy *Vaughn*'s exacting requirement of reasonable specificity and "correlating [Exemption 1 claims] with the particular part of a withheld document to which they apply." *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (internal citations and quotations omitted); *see also Oglesby v. Dep't of the Army*, 920 F.2d 57, 66 n.12 (D.C. Cir. 1990) (noting that defendant's affidavit for withholding under Exemption 1 did not "indicate whether there were any segregable portions [of the document] that need not be classified"); *King*, 830 at 223 (holding FBI *Vaughn* submissions under Exemption 1 to be, "in a word, inadequate—wholly lacking in that specificity of description we have repeatedly warned is necessary to ensure meaningful review of an agency's claim to withhold information subject to a FOIA request.")  Thus, in the absence of more specifically tailored and sufficiently detailed *Vaughn* submissions, DOJ has not satisfied its procedural burden under Exemption 1 and is not entitled to summary judgment.

### B. DOJ Has Failed to Demonstrate a "Logical Connection" Between Disclosure of the OLC Opinion and Disclosure of Intelligence Activities, Sources, or Methods

To justify withholding under Exemption 1, the government bears the burden of demonstrating a "logical connection" between the information defendant seeks to withhold and the claimed exemption.  *ACLU v. Dep't of Justice*, 265 F. Supp. 2d 20, 29 (D.D.C. 1980); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *King*, 830 F.2d at 217. Here, DOJ seeks to withhold ten pages of legal analysis on the grounds that the analysis will disclose "intelligence activities, sources, or methods."  Def. Mem. at 10-11.

Notwithstanding that *some* information describing properly classified intelligence activities, sources, or methods may be legitimately withheld from the OLC Opinion, it seems implausible that the disclosure of purely *legal analysis* would disclose sensitive intelligence gathering techniques that "reasonably could be expected to result in damage to the national security." *See* E.O. No. 13526. In particular, given that the OLC Opinion is, fundamentally, a legal analysis of federal law, DOJ has failed to justify the withholding of the provisions of federal law the OLC Opinion analyzed and relied upon, the analysis of that federal law, the conclusions of that analysis, and the circumstances under which that analysis is valid.

Thus, put simply: the agency has not established the "logical connection" between the withholding of legal analysis "in the aggregate," Hardy Decl. ¶ 6 n.3, and possible damage to national security. *Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982).

## C. DOJ May Not Withhold Information Under Exemption 1 to Conceal "Violations of Law, Inefficiency, or Administrative Error" or to "Prevent Embarrassment"

E.O. 13526, § 1.7(a) expressly provides that information may not be classified—and, thus, is improperly withheld under Exemption 1—in order to "conceal violations of the law, inefficiency, or administrative error" or to "prevent embarrassment to a person, organization, or agency." E.O. 13526, § 1.7(a)(1)-(2). *See, e.g.*, *Goldberg v. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987) (stating court's obligation to "ensure that information *not* be classified in order to conceal violations of law, inefficiency, or administrative error; [or] to prevent embarrassment to a person, organization, or agency").

While EFF acknowledges that there may, indeed, be *some* legitimately classified material within the OLC Opinion, given the vague and sweeping breadth of DOJ's *Vaughn* submissions, the patterns of illegal conduct documented in the OIG reports, and the context in which the OLC

Opinion was sought, it seems likely that some material has been classified under E.O. 13526 for an improper purpose. *See ACLU v. Dep't of Defense*, 389 F. Supp. 2d 547, 564-65 (S.D.N.Y. 2005) (noting that inadequate supporting affidavits "raise concern" that defendant's withholding of classified information "is less to protect intelligence activities, sources or methods than to conceal possible 'violations of law'. . . or 'inefficiency' or 'embarrassment'" to the agency). These facts only underscore the need for sufficiently specific *Vaughn* submissions and this Court's thorough *de novo* review of the agency's claims of exemption. However, given DOJ's inadequate *Vaughn* submissions, the agency has not justified its withholdings under Exemption 1 and is not entitled to summary judgment.

### III.   DOJ Has Not Satisfied Its Burden of Demonstrating that the Opinion was Properly Withheld in Its Entirety Under Exemption 5

Exemption 5 of FOIA provides a narrow exception for "inter-agency or intra-agency memorandums [sic] or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). The Supreme Court has interpreted Exemption 5 to protect records from disclosure where the withheld material falls "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The first discovery privilege incorporated into Exemption 5 protects records that reflect an agency's "deliberative process"—that is, records that reflect the "opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal citations omitted). A second privilege against discovery incorporated into Exemption 5 is the attorney-client privilege, *id.* at 149, which protects "confidential communications between an attorney and his client relating to a legal matter for

17

which the client has sought professional advice." *Mead Data Cent.*, 566 F.2d at 252.

DOJ asserts that both the deliberative process privilege and the attorney-client privilege shield the Opinion in its entirety from disclosure. For the reasons set forth below, the protections afforded agency records under Exemption 5 are unavailable here.

### A. DOJ Has Improperly Withheld the Opinion Under the Deliberative Process Privilege of Exemption 5

"The deliberative process privilege, a variant of executive privilege, shields only government "materials which are both predecisional and deliberative." *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir 1997), citing *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C.Cir.1988) (en banc); *see also EPA v. Mink,* 410 U.S. 73, 88 (1973). That is, an agency must establish that the withheld record is *both* "predecisional," meaning "it was generated before the adoption of an agency policy" and "deliberative," meaning "it reflects the give-and-take of the consultative process." *Judicial Watch v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (internal quotations omitted); *Nat'l Sec. Archive Fund. v. CIA*, 402 F. Supp. 2d 211, 217 (D.D.C. 2005), quoting *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C. Cir. 1980).[9]

The purposes underlying the deliberative process privilege are varied:

[I]t serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading

---

[9] In reality, the two elements tend to merge. *See, e.g.*, *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) ("[T]he word "deliberative" as used in the law of Exemption 5 is considerably narrower than the colloquial meaning; as a consequence, the "deliberative" and "predecisional" requirements tend to merge. Both terms have come to apply only to documents that contribute to an ongoing deliberative *process* within an agency.") (emphasis in original). As used here, "predecisional" will reflect the document's place in the chronology of the decisionmaking process, *see, e.g.*, *Judicial Watch v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) and "deliberative" will reflect the "give-and-take" of agency decisionmaking. *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997).

> the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States*, 617 F.2d at 866.  "The key question to consider" when assessing the applicability of the deliberative process privilege "is whether disclosure would tend to diminish candor within an agency."  *People for the American Way Found. v. Nat'l Park Service*, 503 F. Supp. 2d 284, 298 (D.D.C. 2007), citing *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429 (D.C. Cir. 1992) (internal quotations omitted).

DOJ's reliance upon the deliberative process privilege fails for four reasons.  First, the agency has failed to satisfy its heightened procedural burden to withhold information under Exemption 5; second, the OLC Opinion is not "predecisional" within the meaning of the deliberative process privilege; third, the Opinion is not "deliberative" within the meaning of the deliberative process privilege; and, finally, because DOJ has informally adopted the OLC Opinion as the agency position on the issue, it cannot properly be withheld under Exemption 5.

>  **i.**    **DOJ has Failed to Meet Its Procedural Burden to Justify Withholding the Opinion Under the Deliberative Process Privilege of Exemption 5**

Where the deliberative process privilege of Exemption 5 is at issue, the need for specificity in an agency's *Vaughn* submissions is particularly acute.  *See Judicial Watch v. USPS*, 297 F. Supp. 2d 252, 257 (D.D.C. 2004).  "Because the applicability of the deliberative process privilege is dependent on the content of each document and the role it plays in the decisionmaking process, an agency's affidavit describing the withheld documents must be specific enough so that the elements of the privilege can be identified."  *Id.,* citing *Senate of Puerto Rico v. Dep't of Justice,* 823 F.2d 574, 585 (D.C. Cir. 1987) and *Coastal States,* 617 F.2d at 866).  Indeed, the "first step" in determining whether a document is properly withheld as deliberative under Exemption 5 "is to examine the context in which the materials are used."

*Petroleum Info. Corp.*, 976 F.2d at 1434, citing *Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988); *see also Formaldehyde Inst. v. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1122 (D.C. Cir. 1989) (When examining an agency withholding under the deliberative process privilege, "the pertinent element is the role, if any, that the document plays in the process of agency deliberations.") (internal citations and quotations omitted).

In order to carry its burden to withhold documents under the deliberative process privilege of Exemption 5, the agency must describe with sufficient particularity the "function and significance of the document(s) in the agency's decisionmaking process," as well as the "nature of the decisionmaking authority vested in the office or person issuing the disputed document[]." *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982) (internal quotations and citations omitted). "Without a sufficiently specific affidavit or *Vaughn* Index, a court cannot decide, one way or the other, a deliberative process privilege claim." *Judicial Watch*, 297 F. Supp. 2d. at 260.

The description of the decisionmaking process provided in DOJ's *Vaughn* submissions fails to provide EFF and this Court with sufficient contextual specificity to assess the validity of the agency's deliberative process privilege claim. DOJ variously describes the process in question as "the FBI's evaluation of how it should respond to a draft OIG Report," Hardy Decl. ¶ 11, and "assist[ing] in the FBI's evaluation of its use of certain investigatory procedures[.]" Def. Mem. at 14. Yet the agency has failed to provide sufficient information to fully understand "the function and significance of the document[] in the agency's decisionmaking process," *Arthur Andersen*, 679 F.2d at 258 (D.C. Cir. 1982), and whether the OLC Opinion was "(1) adopted formally or informally, as the agency position on the issue; or (2) used by the agency in its dealings with the public." *Judicial Watch*, 297 F. Supp. 2d at 261 (citing *Arthur Andersen*, 679

F.2d at 257-58) (quotations omitted).

While DOJ vaguely asserts that the OLC Opinion played a role in a decisionmaking process, the agency is strangely silent as to the authority of the FBI to disregard the OLC Opinion and the actual role and effect the document had in the decisionmaking process.  In the absence of a more specific description of the process—not simply "what deliberative process is involved," but identifying the "role the withheld document[] played in [that] process[], *Senate of Puerto Rico*, 823 F.2d at 585-86 (citations and internal quotations omitted), and the authority of the parties involved in the process—neither EFF nor this Court can fully assess the legitimacy of DOJ's withholdings.  Thus, because the agency's *Vaughn* submissions fail to satisfy its procedural obligations under FOIA when invoking Exemption 5, DOJ is not entitled to summary judgment.

> **ii.   The Opinion is Not "Predecisional" and Therefore Cannot be Withheld Under the Deliberative Process Privilege**

In order for an agency record to be considered "predecisional" under the deliberative process privilege, the agency must demonstrate that the document at issue was "'prepared in order to assist an agency decision maker in arriving at [a] decision,' rather than to support a decision already made."  *Petroleum Info. Corp.*, 976 F.2d at 1434, quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975); *Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978) (The deliberative process privilege only protects records "that are actually antecedent to the adoption of an agency policy.").

Moreover, the agency must describe "the nature of the decisionmaking authority vested in the office or person issuing the disputed document," *Taxation With Representation*, 646 F.2d 666, 679 (D.C. Cir. 1981), and "the positions in the chain of command of the parties to the documents." *Arthur Andersen*, 679 F.2d at 258.  "The identity of the parties to the memorandum

is important; a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made." *Coastal States*, 617 F.2d at 868; *see also Access Reports*, 926 F.2d at 1195 ("A document from a junior to a senior is likely to reflect his or her own subjective opinions and will clearly have no binding effect on the recipient. By contrast, one moving from senior to junior is far more likely to manifest decisionmaking authority and to be the denouement of the decisionmaking[.]").

Here, the OLC Opinion tends to confirm and "support a decision already made," *Petroleum Info. Corp.*, 976 F.2d at 1434—namely, the FBI's assertion that federal law does not obligate the Bureau to provide legal process in order to obtain communications records from telephone companies under certain circumstances. *See NSL III* at 263-64. Prior to *NSL III*'s publication in January 2010, the FBI was provided with an opportunity to review the OIG's findings. *Id.* at 263, 265. In comments submitted to the OIG in *July 2009*, the FBI first discussed its perceived authority under federal surveillance law.[10] *Id.* at 265. Indeed, "after reviewing a draft of [*NSL III*]," presumably in July 2009, "the FBI also asserted for the first time that *as a matter of law* the FBI is not required to serve NSLs to obtain" communications records in specific circumstances. *NSL III* at 263 (emphasis added). Thus, potentially as early as July 2009, the FBI asserted to the OIG that federal privacy laws did not obligate the Bureau to submit valid process prior to obtaining communications records from telephone companies.

---

[10] A portion of the OIG report discussing the FBI's comments, while redacted, provides the relevant inference. *NSL III* states: "It is important to note that the FBI acknowledged in its July 2009 comments to a draft of this report that it had never considered or relied upon [redacted] when it obtained any of the telephone records at issue in this report." *NSL III* at 265. While it is conceivable that the FBI did not assert its novel statutory interpretation in its July 2009 comments, it seems particularly unlikely that the FBI would even mention an interpretation that it had "never considered or relied upon" if it were not also asserting that interpretation to the OIG.

Despite the FBI's representations to the OIG in July 2009, an OLC opinion on the matter was not requested until November 27, 2009.  Def. Mem. at 2.  The OLC Opinion, which "agreed with the FBI['s]" previous legal interpretation, was issued on January 8, 2010—nearly six months after the FBI's first assertion of its purported authority under the law.  *See NSL III* at 263; Def. Mem. at 2.  The OIG report was published twelve days later, on January 20, 2010.  *See* FBI Press Release, *Response to Inspector General's Review of FBI's Use of Exigent Letters* (January 20, 2010).

DOJ claims that the document is predecisional because "it was prepared in connection with the FBI's re-evaluation of sensitive techniques used in national security and law enforcement investigations" and because the OLC Opinion was used to evaluate "how it would respond to drafts of the OIG Report."  Colborn Decl. ¶ 13; Def. Mem. at 13.  Yet a re-evaluation of the techniques used by the FBI never occurred: the Bureau did not rely upon its novel legal interpretation when issuing exigent letters from 2002 to 2006, *NSL III* at 264, the FBI has stated that "it does not intend to rely" on its interpretation in the future, *NSL III* at 265 n. 283, and the OLC Opinion simply "agreed with [an] FBI" assertion of law proffered six months earlier in July 2009.  As such, the OLC Opinion "support[s] a decision already made"—a decision regarding the scope of the FBI's authority under federal law to obtain communications records without process.  *See Petroleum Info. Corp.*, 976 F.2d at 1434.  Further, given that the FBI had already responded to the OIG in July 2009, and given that the OLC Opinion was issued only twelve days prior to the publication of *NSL III*, it is unlikely that the Opinion played a significant—let alone any—role in the FBI's response to the OIG's report.

Moreover, the OLC Opinion is not "predecisional" because the FBI lacked the authority to disregard the Opinion.  The OLC Opinion represents the final decision of the DOJ and the

Executive Branch on the authority of the FBI to obtain communications records in certain circumstances; thus, the Opinion must be treated as the final decisional document on the legality of the FBI's practices.  *See* David Barron, Department of Justice, *Memorandum for Attorneys of the Office*, *Re: Best Practices for OLC Legal Advice and Written Opinions*, (July 16, 2010) ("OLC Best Practices") at 1 ("OLC's central function is to provide, pursuant to the Attorney General's delegation, *controlling legal advice* to Executive Branch officials in furtherance of the President's constitutional duties[.]") (emphasis added) (filed herewith as Exhibit B).[11]  While OLC opinions are not binding on the courts, *see, e.g.*, *Nat'l Mining Ass'n v. Slater*, 167 F. Supp. 2d 265, 284 n.18 (D.D.C. 2001), OLC opinions are binding on the Executive Branch "until withdrawn by the Attorney General or overruled by the courts."  *Pub. Citizen v. Burke*, 655 F. Supp. 318, 321-22 n.5 (D.D.C. 1987), citing *Smith v. Jackson* 246 U.S. 388, 390-91 (1918); *see also* 28 C.F.R. § 0.25(a).  The President, too, has the authority to overrule a position taken in an OLC opinion.  *See* Randolph D. Moss, *Recent Developments Federal Agency Focus: The Department of Justice: Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1305 (Fall 2000) ("The legal advice of the Office [of Legal Counsel], often embodied in formal written opinions, constitutes the legal position of the executive branch, unless overruled by the President or the Attorney General.").

The FBI, however, is bound by OLC's formal legal opinions.  *See* OLC Best Practices at 1.  Thus, because the OLC Opinion has "operative and controlling effect" unless "referred to a higher authority in the Department," the Opinion may not be legitimately withheld as "predecisional" under the deliberative process privilege.  *Coastal States*, 617 F.2d at 867.

---

[11] *Available at* www.justice.gov/olc/pdf/olc-legal-advice-opinions.pdf

Finally, it is not enough for DOJ to assert that the OLC Opinion was "prepared to assist the FBI in re-evaluating its use of sensitive investigatory techniques to obtain telephone records." Def. Mem. at 13.  Because the OLC Opinion assessed FBI investigatory techniques that were already used, and because the Opinion opined on, and agreed with, a legal position that the Bureau had already asserted, the re-evaluation of existing policy or agency action, alone, does not make the OLC Opinion a predecisional document.  *Pub. Citizen v. OMB*, 598 F.3d 865, 867 (D.C. Cir. 2010) (When an agency re-evaluates its policy, "it logically starts by discussing the existing policy, and such discussions hardly render documents explaining the existing policy predecisional.")  If the rule were otherwise, "it would be hard to imagine any government policy document that would be sufficiently final to qualify as non-predecisional and thus subject to disclosure under FOIA."  *Id.*

Because the OLC Opinion simply supports a decision already made concerning the scope of the FBI's authority under federal law, and because the FBI lacked the discretion to disregard the OLC Opinion, the document is not "predecisional" and, consequently, may not properly be withheld under the deliberative process privilege of Exemption 5.

### iii.    The Opinion is Not "Deliberative" and Therefore Cannot be Withheld Under the Deliberative Process Privilege

A document is "deliberative" if it "reflects the give-and-take of the consultative process." *Coastal States*, 617 F.2d at 866.  Documents are "deliberative only if they 'reflect[ ] advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated, [or if they reflect] the personal opinions of the writer prior to the agency's adoption of a policy.'"  *Pub. Citizen v. OMB*, 598 F.3d at 875, citing *Taxation With Representation Fund v. IRS,* 646 F.2d 666, 677 (D.C.Cir.1981); *see also Coastal States*, 617 F.2d at 866 ("Documents which are protected by the privilege are those

which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as

agency position that which is as yet only a *personal* position.") (emphasis added).  To

demonstrate that a record is deliberative, an agency must show that the record "weigh[s] the pros

and cons of agency adoption of one viewpoint or another."  *Coastal States* at 866.  Indeed, in

order to be "deliberative" the withheld record must reflect a "'decision' being made or 'policy'

being considered."  *Coastal States*, 617 F.2d at 868.

  First, the OLC Opinion is not part of an ongoing policy discussion with the FBI.  Instead,

as described above, the Opinion—itself the "product of a careful and deliberate process," OLC

Best Practices at 3—represents the Executive Branch's "final word on the controlling law."  *Id.*

at 1.  The "opinions" expressed in the OLC Opinion are not "personal positions" or "personal

opinions," *Coastal States*, 617 F.2d at 866, but rather are an authoritative statement of the

Executive Branch's interpretation, "pursuant to Attorney General delegation," of federal law.

OLC Best Practices at 1.  The FBI asked a legal question of OLC: whether federal law permits

the Bureau to obtain communications records without legal process in certain circumstances.

*NSL III* at 264 n. 280.  The FBI did not seek the OLC's advice on whether application of this

authority would constitute sound policy or whether using the authority would be a good idea:

instead, it posed a legal question to the entity within the Executive Branch tasked with providing

final agency statements of law.  *See id.*; OLC Best Practices at 1.

  Furthermore, the OLC Opinion at issue here did not deal with a prospective application

of federal law, as is normally the case.  OLC Best Practices at 3 ("OLC avoids opining on the

legality of past conduct (though from time to time we may issue prospective opinions . . . that

necessarily bear on past conduct in addressing an ongoing legal issue.)").  Instead, the FBI

sought the Opinion in order to confirm its stated interpretation that, "as a matter of law," the

Bureau can obtain communications records without legal process in certain circumstances. *NSL III* at 263. Advice concerning the *policy* choice—whether or not to rely on the FBI's perceived legal power —was not sought, nor is likely reflected, in the OLC Opinion. And, indeed, the OLC Opinion had no effect on the FBI's stated policy choice.[12] *See NSL III* at 264, 265 n. 283 (noting that the FBI did not rely on its interpretation when requesting the records at issue in *NSL III*, nor does the FBI "intend to rely" on its perceived legal authority).

Thus, "to the extent the documents at issue in this case neither make recommendations for policy change nor reflect internal deliberations on the advisability of any particular course of action, they are not [deliberative] despite having been produced by an agency that generally has an advisory role." *Pub. Citizen v. OMB,* 598 F.3d at 875. And, despite OLC's generally advisory role, the OLC Opinion at issue here may not be shielded from disclosure by the deliberative process privilege because it is not "deliberative."

     iv.     **DOJ Has Informally Adopted the OLC Opinion as the Agency Position on the Issue, and Therefore Cannot Withhold the Opinion Because it Constitutes the "Working Law" of the Agency**

Even if a document is protected by the deliberative process privilege at the time it is prepared, the document can "lose that status if it is adopted, formally or informally, as the agency position on an issue." *Coastal States,* 617 F.2d at 866; *see also Arthur Andersen,* 679 F.2d at 257-58 (same); *Judicial Watch,* 297 F. Supp. 2d at 261 (same). This rule stems from a line of decisions in the D.C. Circuit evincing "a strong theme . . . that an agency will not be

---

[12] That the FBI has opted not to exercise its alleged authority under federal law does not shield the document setting forth that authority from disclosure. *See Afshar v. Dep't of State,* 702 F.2d 1125, 1142-43 (D.C. Cir. 1983) ("Any alternative result, allowing the government to withhold all memoranda that are not part of the delicate consultative process but that also do not adopt or apply a policy or law directly applicable to individual citizens, would prevent the public from finding out about a great number of government operations knowledge of which Congress thought was vital to an informed citizenry.").

permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties

and in its dealings with the public, but hidden behind a veil of privilege because it is not

designated as 'formal,' 'binding,' or 'final.'" *Coastal States*, 617 F.2d at 867.  Thus, "to prevent

the development of secret law within" an agency, DOJ carries the burden of establishing that

records withheld as "deliberative" contain "the ideas and theories which go into the making of

the law" and not "the law itself." *Sterling Drug v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971).

The "working law" of an agency, as defined by the D.C. Circuit, includes "those policies or

rules, and *the interpretations thereof*, that 'either create or determine the extent of the substantive

rights and liabilities of a person.'" *Afshar v. Dep't of State*, 702 F.2d 1125, 1141 (D.C. Cir.

1983), citing *Cuneo v. Schlesinger,* 484 F.2d 1086, 1090 (D.C.Cir.1973) (emphasis added).

Because of its status as an authoritative and controlling opinion on the scope of the FBI's

authority under federal law, the OLC Opinion represents the "'working law' of [the] agency."

　　*NSL III* makes this much clear: the FBI believes "as a matter of law" that it can obtain

communications records without legal process in certain circumstances, *NSL III* at 263; the OLC

Opinion supports and affirms that position.  *NSL III* at 264.  Setting aside the Bureau's policy

decision of whether to use this legal authority, the fact remains that the OLC Opinion constitutes

the final interpretation and expression of the FBI's effective authority under federal law—an

interpretation that "determine[s] the extent of [] substantive rights" under the SCA and ECPA.[13]

Because "Exemption 5, properly construed, calls for disclosure of all 'opinions and

interpretations' which embody the agency's effective law and policy," *NLRB. v. Sears, Roebuck*

*& Co.*, 421 U.S. 132, 153 (1975) (internal citations omitted), the deliberative process privilege is

---

[13] As noted in Section III(B), *infra*, the OLC Opinion may have an operative effect on the liability of telephone companies for improper disclosure of customer communications records to the government.  *See* 18 U.S.C. § 2707 (providing cause of action for violations of the Stored Communications Act).

unavailable to shield the OLC Opinion from disclosure.  *See also id.* at 153 ("The affirmative

portion of [FOIA], expressly requiring indexing of 'final opinions,' . . . . 5 U.S.C. § 552(a)(2),

represents a strong congressional aversion to 'secret (agency) law'") (internal citations omitted);

OLC Best Practices at 1 ("OLC's advice may effectively be the final word on controlling law.").

Several cases support the proposition that agencies should not be permitted to shield a

body of secret law behind a veil of privilege.  For example, in *Tax Analysts v. IRS*, 117 F.3d 607

(D.C. Cir. 1997), the D.C. Circuit held that IRS documents containing legal advice to field

offices were not protected under the deliberative process privilege because even though they

"may precede the field office's decision in a particular taxpayer's case, they do not precede the

decision regarding the agency's legal position."  *Id.* at 617.  Those legal analyses, the D.C.

Circuit held, could not be withheld under the deliberative process privilege because they

"create[d] a body of private law, applied routinely as the government's legal position[.]"  *Id.*

Indeed, even though the legal analyses "evaluate[d] the strengths and weaknesses of alternative

views," the documents were not exempt under the deliberative process privilege: "the

government's opinion about what is not the law and why it is not the law is as much a statement

of government policy as its opinion about what the law is."  *Id.*

This case is directly analogous: while the OLC Opinion may precede the FBI's decision

to exercise its policy judgment in certain circumstances, the Opinion constitutes the final

"decision regarding the agency's legal position" with respect to the FBI's ability to obtain

communications records.  *Id*; s*ee also Pub. Citizen v. OMB*, 598 F.3d at 868 (holding that

documents containing "a background discussion of legal and statutory issues" used to make later

"case-by-case" judgments could not be withheld under deliberative process privilege).  Thus,

even if the OLC Opinion evaluates the "strengths and weaknesses of alternative views," *Tax*

*Analysts*, 117 F.3d at 617, the Opinion is not protected by the deliberative process privilege.

Likewise, in *Sterling Drug v. FTC*, 450 F.2d 698 (D.C. Cir. 1971), the D.C. Circuit held that two memoranda created (but not publicly released) by the FTC in response to particular cases reflected final legal opinions applying the law to specific facts.  Because the FTC opinions were "presumably neither argumentative in nature nor slanted to reflect a particular Commissioner's view," the "policy of promoting the free flow of ideas within the agency does not apply here, for private transmittals of binding agency opinions and interpretations should not be encouraged."  *Id*. at 708; *cf*. OLC Best Practices at 1 ("OLC's central function is to provide . . . controlling legal advice to Executive Branch officials . . . provid[ing] advice based on its best understanding of what the law requires—not simply an advocate's defense of the contemplated action.").  The *Sterling Drug* court held that, rather than reflecting the "ideas and theories which go into the making of the law," such memoranda "are the law itself, and as such should be made available to the public."  *Id*.

In contrast, DOJ relies on primarily on *Southam News v. INS*, 674 F. Supp. 881 (D.D.C. 1987) to support its position that a final, controlling OLC Opinion may be withheld in its entirety under Exemption 5.[14]  *Southam*, however, is distinguishable in significant respects: the OLC opinions at issue were either prepared for the Attorney General or drafts of OLC Opinions.  *See Southam News*, 674 F. Supp. at 886 ("One document . . . is a five-page opinion written by the Assistant Attorney General of OLC for the Attorney General[.]  The second document . . . is an undated draft OLC opinion.").  With regard to the withholding of the OLC opinion written for

---

[14]  DOJ also relies on *Morrison v. Dep't of Justice*, Civ. No. 87-3394, 1988 WL 47662 (D.D.C. Apr. 29, 1988).  That reliance, however, is misplaced because the only issue presented to the court was whether defendant had waived the deliberative process privilege based on two articles that appeared in the *Washington Post*. *Id*. at *2.  Thus, the case does not directly address any of the issues relevant here.

the Attorney General in *Southam*, the Attorney General, along with the President, is one of two Executive Branch officials free to disregard or withdraw OLC opinions, *see Pub. Citizen v. Burke*, 655 F. Supp. 318, 321-22 n.5 (D.D.C. 1987); thus, as opposed to the OLC Opinion at issue here, the opinion in *Southam* is more akin to a predecisional document moving from a "subordinate to a superior official."  *Coastal States*, 617 F.2d at 868.  As to the draft OLC opinion in *Southam*, the opinion's status as a "draft," while not determinative, is more likely to reflect a "predecisional" record than a final OLC opinion, such as the one at issue in this case. *See Arthur Andersen*, 679 F.2d at 257.  *Southam*, however, does not stand for the proposition that when the OLC issues a final, authoritative opinion, binding on a component of the Executive Branch, that the deliberative process privilege may shield the disclosure of that opinion.

Indeed, a third case cited by DOJ, *Brinton v. Dep't of State*, 636 F.2d 600 (D.C. Cir. 1980), recognizes as much: "Exemption 5 does not protect final statements of policy or final actions of agencies, which have the force of law or which explain agency action already taken . . .  The rationale underlying the 'final opinion' exception to the deliberative process rule is to prevent agencies from developing a body of 'secret law' veiled by the privilege of Exemption 5." *Brinton*, 636 F.2d at 605.

The final and binding legal analysis contained within the OLC Opinion provides the legal basis for past agency conduct and may provide the basis for future conduct.  As the D.C. Circuit has repeatedly held, agencies may only shield from disclosure "the ideas and theories which go into the making of the law," not "the law itself."  *Sterling*, 450 F.2d at 708.  Thus, DOJ has improperly withheld the OLC Opinion under the deliberative process privilege.

### B.  DOJ Has Improperly Withheld the Opinion Under the Attorney-Client Privilege of Exemption 5

DOJ also seeks to rely upon the attorney-client privilege, which protects an "attorney's

written communications to a client, to ensure against inadvertent disclosure, either directly or by implication, of information which the client has previously confided to the attorney's trust." *Coastal States*, 617 F.2d at 862, citing *Mead Data Cent.*, 566 F.2d at 254 n. 25.

In order to support a claim of exemption under the attorney-client privilege, an agency bears the burden of demonstrating "that the information is confidential.  If the information has been or is later shared with third parties, the privilege does not apply."  *Mead Data Cent.*, 566 F.2d at 253; *see also In re Sealed Case*, 676 F.2d 793, 809 (D.C. Cir. 1982) ("[A]ny voluntary disclosure by the client to a third party breaches the confidentiality of the attorney-client relationship and therefore waives the privilege[.]").  In the case of an organizational client, the confidential communication must be "circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.'"  *Coastal States*, 617 F.2d at 863 (quoting *Mead Data Cent.*, 566 F.2d at 253 n. 24).[15]  Here, DOJ's brief and affidavit demonstrate that the agency has waived its claim of attorney-client privilege due to the agency's willing disclosure of the Opinion to various third parties.

First, in order to protect communications from an attorney to a client under the attorney-client privilege, it must be shown that the facts contained within that communication were kept confidential.  *See In re Sealed Case*, 877 F.2d 976 (D.C. Cir. 1989) ("The confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived.  The courts will grant no greater protection to those who assert the privilege than their own precautions warrant.").

DOJ has not, and likely cannot, demonstrate that it has "jealously guarded" the confidentiality of its communications between OLC and the FBI.  The agency's affidavit

---

[15] In the attorney-client context, "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific [instances of waiver]."  *Davis v. Dep't of Justice*, 968 F.2d 1276 (D.C. Cir. 1992).  Indeed, DOJ's own declarations sufficiently satisfy EFF's burden of production in establishing that the OLC Opinion has been shared with third parties.  Thus, the burden of proof must shift back to defendant to demonstrate that a waiver has not occurred.

concedes as much: the OLC Opinion, and the facts described in the memo, have "been shared with others within the Government." Colborn Decl. ¶ 12. This includes the DOJ's OIG, *see NSL III* at 263-68, members of Congress and their staff, *see* Marisa Taylor, *Obama Assertion: FBI Can Get Phone Records Without Oversight*, McClatchy Newspapers (Feb. 11, 2011) ("Sens. Richard Durbin, D-Ill., and Ron Wyden, D-Ore., demanded more than a year ago that Attorney General Eric Holder release a copy of the memo."); *see also NSL III* at 268 (exhorting Congress to view and consider the gap in accountability created by the OLC Opinion);[16] agency personnel outside the Department of Justice, *see* Hardy Decl. ¶ 20 (noting the "FBI referred the OLC Memo for consultation with" other government agencies); and even, perhaps, employees of the three telephone companies who feared potential liability stemming from their illegal disclosure of customer records. This type of wide distribution of the OLC Opinion and the purportedly "confidential" facts on which it is based is inconsistent with the attorney-client privilege's requirement to "jealously" guard the confidential information.

Second, DOJ conflates the issue of classification and confidentiality when invoking the attorney-client privilege. In essence, the agency argues that, because *some* of the material contained within the OLC Opinion is classified—requiring, in turn, proper security clearances for those reading the memo—the *entire* document is protected by the attorney-client privilege because only those with a proper security clearance would have viewed the Opinion and "would have understood the need for confidentiality." Colborn Decl. ¶ 12. Yet the attorney-client privilege is not so broad: indeed, the attorney-client privilege "is to be narrowly construed and is limited to those situations in which its purposes will be served." *Coastal States*, 617 F.2d at 862.

Thus, it simply is not enough for DOJ to assert that only those with an appropriate security clearance viewed the Opinion and "understood the need for confidentiality." *See Elec. Privacy Info. Ctr. v. Dep't of Justice*, 584 F. Supp. 2d 65, 79 (D.D.C. 2008) ("It is not the case

---

[16] *Available at* http://www.mcclatchydc.com/2011/02/11/108562/obama-assertion-fbi-can-get-phone.html#ixzz1DmEP4etk

that just because the documents at issue contain classified information the documents are protected by the attorney-client privilege.  The attorney-client privilege protects confidential information that involves or is about that client.").  The classified status of some material within an otherwise privileged attorney-client communication does not create the presumption that, when shared with third parties who also have an appropriate security clearance, that the attorney-client privilege is preserved.[17]  The "*raison d'etre*" of the attorney client privilege—"that persons, including organizations, will be induced to consult counsel when needed," *In re Sealed Case*, 877 F.2d 976, 979 (D.C. Cir. 1989)—is defeated when the client, the attorney, or both intentionally distribute that advice to third parties.  *See, e.g.*, *Nat'l Day Laborer Organizing Network v. ICE*, Civ. A. No. 10-3488, 2011 WL 5056989, *7 (S.D.N.Y. Oct. 24, 2011) (holding attorney-client privilege waived where ICE officials "discussed the legal justifications" for agency actions with third parties).  DOJ must carry the burden of establishing that the attorney-client privilege has not been destroyed and, given the statements contained within its affidavits, the agency has not satisfied that burden.[18]

---

[17] To illustrate, hypothetically, if the FBI was involved in a contract dispute with the manufacturer of a classified surveillance system, the FBI would likely need to disclose confidential (and possibly classified) facts concerning the dispute to the agency's counsel— attorneys within the Department of Justice.  If DOJ attorneys then intentionally relayed those facts to the manufacturer of the classified weapon—the party with whom the agency was involved in the dispute—there is no question that the attorney-client privilege would be waived as to those facts, their classified status and the security clearances of the surveillance system manufacturer notwithstanding.

[18] EFF assumes, for purposes of this motion, that DOJ is claiming either Exemption 1 or the attorney-client privilege of Exemption 5 to withhold from release all factual material contained within the OLC Opinion.  Of course, purely factual material, not protected by another exemption or privilege, may not be withheld under the deliberative process privilege of Exemption 5.  *Army Times Publ'g Co. v. Dep't of Air Force,* 998 F.2d 1067, 1071 (D.C. Cir. 1993) ("The deliberative process privilege does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must.").  Thus, to the extent the OLC Opinion contains factual information unprotected by either the attorney-client privilege or Exemption 1, those facts must be segregated and released.  *See id.*

Finally, it bears noting that, like the deliberative process privilege, *see* Section III(A)(iv), *supra*, the attorney-client privilege cannot be used to shield from disclosure an agency's "working law"—including "neutral, objective analyses of [the law]" or documents comprising "a body of private law, applied routinely as the government's legal position." *Coastal States,* 617 F.2d at 863; *Tax Analysts,* 117 F.3d at 619.  Indeed, even where such opinions provide "case-specific" guidance, they do not fall within the attorney-client privilege and must be disclosed. *Tax Analysts,* 117 F.3d at 619-20 (requiring disclosure of opinions of IRS General Counsel's office and restricting assertion of privilege to "*particular portions* of [opinions] containing . . . confidential governmental information").

The OLC Opinion is likely exactly that: a neutral, objective analysis of the federal law setting forth the Executive Branch's controlling position the acquisition of communications records by the FBI in certain circumstances.  *See NSL III* at 263-68; *see also* OLC Best Practices at 1 ("[I]n rendering legal advice, OLC seeks to provide an accurate and honest appraisal of applicable law, even if that appraisal will constrain the Administration's or agency's pursuit of desired practices or policy objectives.").  The Opinion is simply a neutral analysis of the scope of the FBI's authority under the law.  Indeed, as in *Tax Analysts*, even if the Opinion applies "case specific" guidance—such as the legality of certain investigatory techniques or methods—the Opinion would still be subject to disclosure.

Thus, even if the attorney-client privilege were intact, it would not be available to shield the disclosure of the OLC Opinion because it constitutes the "working law" of the agency. Regardless, DOJ has waived its claim of attorney-client privilege through its voluntary disclosure of the OLC Opinion to various third parties.  Consequently, the attorney-client privilege is unavailable to withhold the OLC Opinion.

### V.    DOJ Has Failed to Satisfy Its Obligation to Release Reasonably Segregable Material

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  A segregability analysis is so vital to FOIA's broad mandate of disclosure that a district court has an affirmative duty to consider segregability *sua sponte*. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  "A district court that 'simply approve[s] the withholding of an entire document without entering a finding on segregability, or lack thereof,' errs." *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) (citations omitted).

Here, DOJ has failed to make any showing regarding the segregability of material within the OLC Opinion. Indeed, the only mention of segregability within the agency's moving papers appears in a quotation of the text of E.O. 13526, which similarly requires that unclassified portions of otherwise classified documents be segregated and released.  Def. Mem. at 10.  Without some segregability showing, "explaining in detail which portions of the document are disclosable and which are allegedly exempt," *Edmonds Inst. v. Dep't of Interior*, 383 F.Supp.2d 105, 108 (D.D.C. 2005), DOJ has not carried its burden and is not entitled to summary judgment.

### Conclusion

For the foregoing reasons, EFF respectfully requests that the Court deny DOJ's motion for summary judgment, grant EFF's cross-motion, and order the immediate production of the OLC Opinion in its entirety, with limited redactions, if any, for appropriately classified material.

Respectfully submitted,

*/s/ David L. Sobel*
DAVID L. SOBEL
D.C. Bar No. 360418
Electronic Frontier Foundation

1818 N Street, N.W., Suite 410
Washington, DC 20036
(202) 797-9009

MARK RUMOLD (Admitted in California)
Electronic Frontier Foundation
454 Shotwell Street
San Francisco, CA 94110
(415) 436-9333

Counsel for Plaintiff