# EXHIBIT A

Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment

*Electronic Frontier Foundation v. Department of Justice*, C.A. No. 11-cv-0939 (RJL)

**U.S. Department of Justice**
Office of the Inspector General

# A Review of the Federal Bureau of Investigation's Use of Exigent Letters and Other Informal Requests for Telephone Records



Oversight and Review Division
Office of the Inspector General
January 2010

UNCLASSIFIED

not request voluntary disclosure, but instead stated that compulsory legal process (generally grand jury subpoenas) had already been requested and would be served "as expeditiously as possible." In addition, employees of the on-site providers told us they usually were given no information about the circumstances underlying the exigent letters or other informal requests for records, and that they "assumed" the circumstances were exigent. Further, at least one of the provider's employees told us he had doubts about whether the requests were truly exigent.[276] Under these circumstances, it is difficult to determine whether and when the providers' employees had the statutorily required "reasonable" or "good faith" belief that the requisite emergency circumstances existed.[277]

After reviewing a draft of this report, the FBI also asserted for the first time that as a matter of law the FBI is not required to serve NSLs to obtain "records associated ███████████████" in national security investigations. According to the FBI, the majority of exigent letter and other informal requests discussed in this report were for telephone records ███████████████████████████████████████████ the FBI could have obtained these records without any legal process or qualifying emergency through voluntary production by the communications service providers.[278]



---

[276] This provider ultimately required FBI requesters to endorse a stamped certification that tracked the statutory language in Section 2702 before the provider would provide records in response to exigent letters.

[277] After reviewing a draft of this report, the FBI asserted that the legal standard of Section 2702 could be met when an FBI employee requested telephone records in a qualifying emergency, regardless of whether the FBI employee was aware of the statute. The FBI also asserted that the providers could form a "reasonable" or "good faith" belief that an emergency existed without necessarily knowing the facts surrounding the emergency. As described above, however, with some exceptions the providers frequently received no information about the investigation for which records were requested, or even a generalized representation that an emergency situation existed.

[278] We disagree with the FBI's statement that the majority of exigent letter and other informal requests discussed in this report were for telephone records ███████████ ██████ In fact, we determined, based on the FBI's records, that the majority of its exigent letter requests were for toll billing records associated ████████████████ ███████████ We were unable to reach a conclusion concerning the percentage █ █████████████████████████ requested through informal means other than exigent letters, because the records for these requests (some of which were oral or written on post-it notes) are incomplete and therefore unreliable.



The FBI did not rely on this section when it requested and obtained the records discussed in this report. However, after reviewing a draft of the OIG report the FBI asked the Office of Legal Counsel (OLC) for a legal opinion on this issue.[280] When making the request for an OLC opinion, the FBI stated that ███████████████████████████████████

On January 8, 2010, the OLC issued its opinion, concluding that the ECPA "would not forbid electronic communications service providers ███████████████████████████████████[281] In short, the OLC agreed with the FBI that under certain circumstances ███████ allows the FBI to ask for and obtain these records on a

---

[279] The *Stored Communications Act*, codified in Chapter 121 of Title 18 at 18 U.S.C. §§ 2701-2712, was enacted in 1986 as part of the ECPA. The *Stored Communications Act* contains the relevant NSL and other FBI access to toll billing records provisions at issue in this report.

[280] The FBI presented the issue to the OLC as follows: "Whether Chapter 121 of Title 18 of the United States Code applies to call detail records associated ███████████████████████████████████

[281] ███████████████████████████████████

voluntary basis from the providers, without legal process or a qualifying emergency.

It is important to note that the FBI acknowledged in its July 2009 comments to a draft of this report that it had never considered or relied upon ███████████████ when it obtained any of the telephone records at issue in this report. Moreover, it cannot be known at this point whether any provider would have divulged such records based on ███ ███████████████ alone, and without the FBI's representation to the provider that an NSL or other compulsory legal process would be served.

For the reasons discussed below, we believe the FBI's potential use of ███████████ to obtain records has significant policy implications that need to be considered by the FBI, the Department, and the Congress.



282

283



---

282 ███████████████████████████████████████████████████████████████████████████████

283 The FBI has stated that it does not intend to rely on ███████████████ ███████████████████████████████████████ However, that could change, and we believe that appropriate controls on such authority should be considered now, in light of the FBI's past practices and the OLC opinion.



[285 ████████████]

[287 ████████████]

---

[284] Under 18 U.S.C. § 2709(b) the FBI may only issue NSLs to obtain such records upon the certification that the records sought are relevant to an authorized counterterrorism or counterintelligence investigation. In the voluntary context, the FBI may request and obtain such records under 18 U.S.C. § 2702(c)(4) only if "the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency."

[285] For example, requests for voluntary disclosure under the emergency circumstances provisions of the ECPA NSL statute must be approved at a level not lower than an Assistant Special Agent in Charge in a field office and a Section Chief at Headquarters. See FBI OGC Electronic Communication (EC) to all Divisions (March 1, 2007), at 4. The EC also advises that approval of such requests must be in writing, even if the initial approval was oral. The rank of the approving official for NSLs is set by statute at Special Agent in Charge in field offices and Deputy Assistant Director at Headquarters. See 18 U.S.C. § 2709(b).

[286] Under the ECPA NSL statute, the FBI is required to report to certain congressional committees, on a semiannual basis, concerning all NSL requests made under Section 2709(b). See 18 U.S.C. § 2709(e).

[287] Moreover, other collections of similar types of records for intelligence activities contain statutorily mandated approval, minimization, and reporting requirements. For example, the FISA business records provisions provide useful comparisons as to how such intelligence activities are regulated, ████████████████████████ Under these provisions, the FBI may apply to the FISA Court for an order requiring the production (Cont'd.)



of business records and other tangible things "to obtain foreign intelligence information not concerning a United States person." See 50 U.S.C. § 1861. By statute, use of this authority is subject to extensive Attorney General-approved minimization procedures governing how information acquired concerning U.S. persons must be retained and disseminated. Id. at § 1861(g). The FBI is also subject to comprehensive congressional reporting requirements as to all orders it obtains, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Id. at § 1862.

[288] As discussed in this report, under the ECPA NSL statute, the FBI may only seek toll billing records when relevant to an authorized counterterrorism or counterintelligence investigation, provided that the investigation of a U.S. person is not conducted solely on the basis of activities protected by the First Amendment to the Constitution. See 18 U.S.C. § 2709(b). Provisions in the FISA statute similarly protect U.S. persons with respect to FBI applications to the FISA Court seeking orders to produce business records (50 U.S.C. § 1861(a)(2)(B)) and to conduct electronic surveillance (50 U.S.C. § 1805(a)).

[289] We recognize that the FBI's Domestic Investigations and Operations Guide (DIOG) and Executive Order 12,333, as amended, contain restrictions on how the FBI can collect, use, and disseminate intelligence, particularly with respect to the privacy and civil liberties interests of U.S. persons. However, these constraints are not statutory.

[290] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

In sum, the potential use of ▮▮▮▮▮ by the FBI has important policy implications for ▮▮▮▮▮ We believe that ▮▮▮▮▮ creates a significant gap in FBI accountability and oversight that should be examined closely by the FBI, the Department, and Congress.

It is also important to recognize that the FBI advanced the ▮▮▮▮▮ only after the OIG found repeated misuses of its statutory authority to obtain telephone records through NSLs or the ECPA's emergency voluntary disclosure provisions. We believe that, given the abuses described in this report, it is critical for the Department and Congress to consider appropriate controls on any use by the FBI of its authority to obtain records voluntarily ▮▮▮▮▮

The OIG therefore recommends that the FBI and the Department consider how the FBI may use ▮▮▮▮▮ when seeking telephone billing records, particularly with respect to ▮▮▮▮▮ We also recommend that the Department notify Congress of this issue and of the OLC opinion interpreting the scope of the FBI's authority under it, so that Congress can consider ▮▮▮▮▮ and the implications of its potential use.

### B. Other Informal Requests for Telephone Records

We found that without any documentation for the requests except possibly e-mail messages, CAU personnel routinely asked the on-site providers' employees to provide calling activity information in response to what were referred to as "sneak peeks." Using sneak peeks, the FBI requested the providers' employees ▮▮▮▮▮ their databases and tell the FBI whether they had any records on specified telephone numbers. At the FBI's request, the providers would conduct sneak peeks and sometimes give the FBI additional information about the telephone records, such as whether there was calling activity between specified numbers or calls to or from certain ▮▮▮▮▮ These sneak peeks were conducted without any legal process whatsoever.

We also concluded that many of these sneak peeks violated the ECPA, which prohibits communications service providers from knowingly divulging "a record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity" except pursuant to legal process or in certain limited circumstances set forth in the statute. 18 U.S.C. § 2702(a)(3). The relevant exceptions require providers to disclose such records or information in response to compulsory process, such as